UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES L. COLLINS, JR.,

                    Petitioner,

v.                                          Case No. 3:18-cv-164-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner James L. Collins, Jr., an inmate of the Florida penal system, initiated this action on January 23, 2018,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Collins challenges a 2013 state court (Duval County, Florida) judgment of conviction for grand theft. He raises four grounds for relief. See Petition at 5-51.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 21). They also submitted exhibits. See Resp. Exs. A-O, Docs. 21-1 through 21-10. Collins filed a brief in reply. See Reply Brief (Doc. 22). He also submitted exhibits. See Docs. 22-1 and 22-2. This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On April 24, 2013, the State of Florida charged Collins, by Information in case number 16-2013-CF-003339-AXXX-MA, with grand theft. See Resp. Ex. B1 at 8. At the conclusion of a trial on September 10, 2013, a jury found Collins guilty, as charged. See Resp. Exs. B1 at 23, Verdict; B2 and B3, Transcripts of the Trial Proceedings (Tr.), at 252.[3] The circuit court sentenced Collins to a term of imprisonment of ten years, as a habitual felony offender (HFO), on September 25, 2013. See Resp. Ex. B1 at 46-52, Judgment; 105-27, Transcript of the Sentencing Proceeding (Sentencing Tr.).

On appeal, Collins, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it (1) denied his motions for judgment of acquittal because the State did not present a prima facie case of the value of the merchandise, and (2) admitted hearsay to prove the essential element of the value of the merchandise. See Resp. Ex. B4. The State filed an answer brief, see Resp. Ex. B5, and Collins filed a reply brief, see Resp. Ex. B6. On June 26, 2014, the appellate court affirmed Collins' conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. B7, and the mandate issued on July 14, 2014, see Resp. Ex. B8.

Collins challenged his HFO sentence in a variety of motions until the appellate court ultimately barred him from filing pro se motions. First, he filed a pro se motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800) on July 16, 2014. See Resp. Ex. C1 at 1-4. The court denied the Rule 3.800 motion on January 21, 2015, see id. at 8-65, stating in pertinent part:

---

[3] The Court will cite the page number in the upper-righthand corner of the transcript.

In the instant Motion, Defendant avers his classification and sentence as an HFO are illegal. Specifically, he takes issue with the State's use of a prior conviction from 1987 which was used to habitualize him. Defendant reasons that because he was released from prison in 1992 in that case and he was not convicted of another felony within five years of his release from prison, the State could not have, and should not have, used his 1987 conviction to classify him as an HFO. Therefore, Defendant avers, his sentence as an HFO is illegal and it exceeds the scoresheet guidelines sentence of twenty-seven months of incarceration. Defendant also contends, through citing several cases, that the State did not sufficiently prove his two prior predicate felony convictions.

A defendant may be sentenced as an HFO if "[t]he defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses." § 775.084(1)(a)1, Fla. Stat. (2012). Additionally, the felony for which the defendant faces sentencing must have been "committed ... [w]ithin 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense." § 775.084(1)(a)2b, Fla. Stat. (2012). Thus, pursuant to section 775.084, the State is only required to reference two of a defendant's prior felony convictions, one of which occurred within five years of the instant felony offense. See id.

In the instant case, the State filed its Notice of Intent to Classify Defendant as a Habitual Felony Offender on July 23, 2013.[4] (Ex. D.) In this Notice, the State relied upon Defendant's following two prior felony convictions: Robbery on February 13, 1987, and Grand Theft on January 13, 2012. (Ex. D.) During Defendant's sentencing hearing, the State submitted into evidence certified copies of Defendant's judgments and sentences for the aforementioned convictions: Robbery in case number CR-86-5800 in Orange County, Florida; and Grand Theft: Third Degree in case number 48-11-CF-16055 in Orange County, Florida.[5] (Exs. E at 7-8, 10-12, 15; F.) Both of these predicate convictions were for felony offenses. See § 812.12(2)(c), Fla. Stat. (1992) (classifying Robbery as a second-degree felony); § 812.014(2)(d), Fla. Stat. (2011) (classifying Grand Theft as a third-degree felony).

---

[4] See Resp. Ex. B1 at 12, Notice of Intent to Classify Defendant as a Habitual Felony Offender.

[5] See Sentencing Tr.; Resp. Ex. C1 at 46-64.

3

> The record demonstrates Defendant committed the instant crime on April 6, 2013,[6] approximately one year after his felony conviction for Grand Theft on January 13, 2012, and well within the five-year period mandated by section 775.084(1)(a)2b. (Exs. F, G.) Therefore, this Court finds the State lawfully relied upon, and proved, two of Defendant's prior felony convictions in classifying him as an HFO. Because Defendant's sentence as an HFO is not illegal, his instant allegations are without merit and the instant Motion is denied.

Resp. Ex. C1 at 8-10. On May 13, 2015, the court denied Collins' request for rehearing, see id. at 69-70, stating that the court did "not find any points of law or fact that were overlooked in deciding [Collins'] Motion," id. at 80. On appeal, Collins filed a pro se initial brief, see Resp. Ex. C2, and the State filed a notice that it did not intend to file an answer brief, see Resp. Ex. C3. On September 28, 2015, the appellate court affirmed Collins' conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. C4, and denied his motion for rehearing on November 2, 2015, see Resp. Exs. C5; C6. The mandate issued on November 18, 2015. See Resp. Ex. C7.

On or about November 9, 2015, Collins filed a pro se motion to correct illegal sentence in the Florida Supreme Court. See Resp. Ex. C8. The court construed the motion as a petition for writ of habeas corpus, and dismissed it on November 12, 2015.[7] See Resp. Ex. C9.

---

[6] See Resp. Ex. B1 at 8, Information.

[7] The court cited Grate v. State, 750 So. 2d 625 (Fla. 1999) (holding that provisions of the Florida Constitution governing the Florida Supreme Court's jurisdiction to issue extraordinary writs may not be used to seek review of an appellate court decision issued without written opinion when the basis for review is an alleged conflict between that decision and an opinion issued by either the Florida Supreme Court or another District Court of Appeal).

Collins also challenged his HFO sentence by filing a pro se petition for writ of habeas corpus on January 19, 2016, see Resp. Ex. D1 at 1-9, and an amended petition on March 7, 2016, in the state circuit court, see id. at 10-20. As relief, he asked that the court resentence him without using the 1987 robbery conviction. See id. at 18. The court denied both petitions on September 15, 2016, see id. at 21-88, stating in pertinent part:

> In the instant Motions, Defendant contends his sentence as a habitual felony offender is illegal because the State used a 1987 robbery conviction as a third conviction to establish Defendant's habitual felony offender status. According to Defendant, because this conviction was not within five years of Defendant committing the offense in the case at bar, his 1987 robbery conviction cannot be used in the habitualization process. Defendant also contends that robbery is not a qualifying offense for purposes of applying the habitual felony offender designation. Therefore, Defendant argues that his conviction of robbery in 1987 taints his convictions on the other counts in his 1987 case, thereby rendering any conviction in his 1987 case inapplicable to the habitual felony offender statute. Furthermore, Defendant claims his 1987 convictions are not subject to the habitual felony offender statute because they occurred prior to enactment of the statute, and that using it to enhance the sentence in the instant case is a violation against the prohibition of double jeopardy.
>
> **A petition for writ of habeas corpus cannot be used to raise issues which could have been raised at trial and on direct appeal**. See Hargrave v. Wainwright, 388 So. 2d 1021, 1021 (Fla. 1980) (it is well settled that habeas corpus may not be used as a vehicle to raise for the first time issues that the petitioner could have raised during the formal trial and on appeal). Likewise, a defendant cannot use a petition for writ of habeas corpus to obtain the kind of collateral postconviction relief which may have been available by filing a motion in the sentencing court pursuant to the Florida Rules of Criminal Procedure. See Baker v. State, 878 So. 2d 1236, 1245 (Fla. 2004) (the common law remedy of habeas corpus is not available in Florida to obtain the kind of collateral postconviction relief available by motion in the sentencing court pursuant to rule 3.850). However, a court can treat an incorrectly styled motion under an applicable rule of criminal

procedure if it is properly pled. <u>Gill v. State</u>, 829 So. 2d 299, 300 (Fla. 2nd DCA  2002) ("Where a movant files a properly pleaded claim but incorrectly styles the postconviction motion in which it was raised, the trial court must treat the claim as if it had been filed in a properly styled motion."). Accordingly, to the extent any of Defendant's claims are cognizable under rule 3.800(a) or another applicable postconviction rule, the Court will treat the motion as such. <u>Id.</u>

Rule 3.800(a) allows for the correction of an illegal sentence. For a sentence to be illegal under rule 3.800(a), "the sentence must impose a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." <u>Blakley v. State</u>, 746 So. 2d 1182, 1187 (Fla. 4th DCA 1999). <u>See also</u> <u>Carter v. State</u>, 786 So. 2d 1173, 1181 (Fla. 2001) (approving the definition of illegal sentence outlined in <u>Blakley</u>). However, "if it is possible under all the sentencing statutes – given a specific set of facts – to impose a particular sentence, then the sentence will not be illegal within rule 3.800(a) even though the judge erred in imposing it." <u>Blakley</u>, 746 So. 2d at 1182. The Court notes that "[a]lthough there is no ban on filing successive 3.800(a) motions, collateral estoppel prohibits a defendant from raising the same illegal sentencing claim which has already been raised in a prior postconviction motion and decided on the merits. <u>Mills v. State</u>, 23 So. 3d 186, 187 (Fla. 1st DCA 2009) (citing <u>State v. McBride</u>, 848 So. 2d 287, 290 (Fla. 2003)).

**As an initial matter, the Court finds that the claims raised in the instant Motions are substantially similar to the claims raised in Defendant's July 16, 2014 Motion, which the Court denied on the merits and the First District Court of Appeal affirmed on appeal. (Exs. E, F.) Accordingly, Defendant's Motions are prohibited pursuant to the doctrine of collateral estoppel. <u>Id.</u>**

Moreover, as explained in the Court's January 21, 2015, the State provided proper evidence to demonstrate Defendant qualified as a habitual felony offender. (Exs. E, G, H, I, J.) To the extent Defendant argues his 1987 conviction cannot be used because it predates enactment of the habitual felony offender statutes, such a claim is meritless. <u>See</u> <u>Grant v. State</u>, 770 So. 2d 655, 661-62 (Fla. 2000) (noting that "[a] habitual offender sentence is not an additional penalty for an earlier crime; rather, it is an increased penalty for the latest

crime, which is an aggravated offense because of the repetition."). Accordingly, Defendant's sentences are not illegal and he is not entitled to relief.

Resp. Ex. D1 at 22-24 (emphasis added). On appeal, Collins filed pro se initial and reply briefs, see Resp. Exs. D2; D3; D5, and the State filed an answer brief, see Resp. Ex. D4. On July 14, 2017, the appellate court affirmed Collins' conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. D6, and the mandate issued on August 11, 2017, see Resp. Ex. D7.

Next, Collins filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850) on February 23, 2016. See Resp. Ex. E at 1-26. In his request for post-conviction relief, Collins asserted that counsel was ineffective because she failed to object to the State's introduction of a photograph into evidence. See id. at 3. The circuit court denied the Rule 3.850 motion on September 19, 2016. See id. at 27-98. On appeal, Collins filed a pro se amended initial brief, see Resp. Ex. E3, and the State filed a notice that it did not intend to file an answer brief, see Resp. Ex. E4. The appellate court affirmed the circuit court's denial of Collins' Rule 3.850 motion per curiam without issuing a written opinion on July 12, 2017, and the mandate issued on August 9, 2017. See Resp. Ex. E6; see also http://onlinedocketsdca.flcourts.org, case no. 1D16-4919.

Collins filed a pro se petition for writ of certiorari on May 4, 2016. See Resp. Ex. F1. The appellate court dismissed the petition per curiam without issuing a written opinion on January 9, 2017, see Resp. Ex. F2, and the mandate issued on February 6, 2017, see Resp. Ex. F3. Collins also filed pro se motions to correct illegal sentence on October 7, 2016, see Resp. Ex. J1 at 1-7, April 11, 2017, see Resp. Ex. J2 at 1-6, and May 16, 2017,

see Resp. Ex. J1 at 25-41. The circuit court dismissed the October 7th and May 16th motions and denied the April 11th motion on June 14, 2017, see Resp. Ex. J1 at 8-24, stating in pertinent part:

> The Defendant has filed a "Motion for Relief from Void of [sic] Judgment," pursuant to Florida Rule of Civil Procedure 1.540(b)(4) construed as a successive "Motion to Correct Illegal Sentence," filed pursuant to Florida Rule of Criminal Procedure 3.800(a). The Defendant again attacks the legality of his sentence listing the same allegation from his July 16, 2014 Motion to Correct. Therefore, this Motion is dismissed as successive. See, Price v. State, 692 So. 2d 971, 971 (Fla. 2d DCA 1997) (noting that rule 3.800 "contains no proscription against the filing of successive motions" but that "a defendant is not entitled to successive review of a specific issue which has already been decided against him"). State v. McBride, 848 So. 2d 287, 290-91 (Fla. 2003)[.] Further, Defendant's Motion is insufficient in that it fails to [attach] court records that demonstrate on their face that he is entitled to relief.
>
> The Defendant's "Motion to Correct Illegal Sentence," filed pursuant to Florida Rule of Criminal Procedure 3.800(a) and filed on April 11, 2017 alleges that the Defendant's sentence is illegal because the issue of whether he met the criteria to be classified as a Habitual Offender was not submitted to a jury. The Defendant's Motion is insufficient in that it fails to [attach] court records that demonstrate on their face that he is entitled to relief. Further, pursuant to 775.084(4)(b), the Court, not the jury[,] must make this determination. The Judgment in this case demonstrates that the Court made this finding required by law.[8] (Exhibit C at Page 6) Therefore, this claim is refuted by the record and the Defendant is not entitled to relief.
>
> The Defendant's "Motion to Correct Illegal Sentence," filed pursuant to Florida Rule of Criminal Procedure 3.800(a) and filed on May 19, 2017 alleges that his illegal sentence violates double jeopardy. Double jeopardy challenges to convictions are not cognizable under rule 3.800(a) for two reasons. First, a traditional double jeopardy challenge attacks both the conviction and, by default, the sentence, while rule 3.800(a) is limited to claims that a sentence itself is illegal,

---

8 See Resp. Ex. B1 at 51; see also Sentencing Tr.

without regard to the underlying conviction. See e.g., Plowman v. State, 586 So. 2d 454, 456 (Fla. 2d DCA 1991); Henry v. State, 920 So. 2d 1204, 1205 (Fla. 4th DCA 2006); Salazar v. State, 675 So. 2d 654, 655 (Fla. 3d DCA 1996); State v. Spella, 567 So. 2d 1051, 1051 (Fla. 5th DCA 1990); Ferenc v. State, 563 So. 2d 707, 707 (Fla. 1st DCA 1990). Second, permitting defendants to attack their conviction and sentence under rule 3.800(a) would subsume Florida Rule of Criminal Procedure 3.850 into rule 3.800(a), thereby allowing defendants to circumvent rule 3.850's two-year time bar for attacking their convictions and sentences. Cf. United States v. Little, 392 F.3d 671, 678 (4th Cir. 2004) (finding that expanding Federal Rule of Criminal Procedure 35(a), after which rule 3.800(a) is modeled, would impermissibly infringe upon other collateral review rules). Coughlin v. State, 932 So. 2d 1224, 1225-26 (Fla. 2d DCA 2006). Therefore[,] the Motion is dismissed.

Resp. Ex. J1 at 8-10 (some emphasis deleted). On appeal, Collins filed initial and reply briefs, see Resp. Exs. J3; J5, and the State filed a notice that it did not intend to file an answer brief, see Resp. Ex. J4. The appellate court affirmed the circuit court's order per curiam without issuing a written opinion on January 11, 2018, see Resp. Ex. J6, and the mandate issued on February 8, 2018, see Resp. Ex. J7.

Collins filed a pro se petition for all writs jurisdiction in the Florida Supreme Court on July 17, 2017. See Resp. Ex. L1. The court dismissed the petition on November 14, 2017, for lack of jurisdiction because Collins had "failed to cite an independent basis that would allow the Court to exercise its all writs authority" and "no such basis [was] apparent on the face of the petition." Resp. Ex. L2. Next, Collins filed a pro se petition for writ of prohibition in the state appellate court on July 19, 2017. See Resp. Ex. M1. In the petition, he asserted that the state circuit court violated the double jeopardy clause of the United States Constitution, the United States Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000), and ex post facto law when it imposed an HFO sentence. See Resp.

Ex. M1. The appellate court denied the petition per curiam on the merits on August 24,

2017. <u>See</u> Resp. Ex. M2.

On February 13, 2018, the appellate court barred Collins from future pro se filings

concerning Duval County case number 16-2013-CF-003339-AXXX-MA, stating in

pertinent part:

> Due to the Appellant's apparent abuse of the legal process by his repeated pro se filings attacking his conviction and sentence, this court issued an order directing the Appellant to show cause why he should not be prohibited from future pro se filings. <u>State v. Spencer</u>, 751 So. 2d 47, 48 (Fla. 1999) (requiring that courts "first provide notice and an opportunity to respond before preventing [a] litigant from bringing further attacks on his or her conviction and sentence."). The appellant has failed to respond.
>
> As such, because the Appellant's continued and repeated attacks on his conviction and sentence have become an abuse of the legal process, **we hold that he is barred from future pro se filings in this court concerning Duval County case 16-2013-CF-3339.** The Clerk is directed not to accept any future filings concerning this case unless they are filed by a member in good standing of The Florida Bar. The Appellant is warned that any filings that violate the terms of this order may result in a referral to the appropriate institution for disciplinary procedures as provided in section 944.279, Florida Statutes. <u>See</u> Fla. R. App. P. 9.410.

Resp. Ex. O (emphasis added).

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. <u>See</u> 28

U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the

need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d

1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Collins'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct.

1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[9] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[10] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v.</u>

---

[9] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[10] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[11] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has

---

[11] Murray v. Carrier, 477 U.S. 478 (1986).

> probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the

> 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable -

a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556
U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
(quotation marks omitted). If there is "any reasonable
argument that counsel satisfied <u>Strickland</u>'s deferential
standard," then a federal court may not disturb a state-court
decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at
788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One, Two, and Four

As ground one, Collins asserts that the trial judge violated the code of judicial

conduct during the trial and sentencing proceedings. <u>See</u> Petition at 5-8. According to

Collins, the judge was biased and unethical, denied him a fair sentencing hearing, and

erred when he found that Collins qualified for an HFO sentence. <u>See id.</u> Additionally, he

maintains that counsel was ineffective when she failed to: notify him that the State was

seeking an HFO sentence, <u>see id.</u> at 7; object to the State's use of the 1987 robbery

conviction to increase the punishment, <u>see id.</u> at 14, and challenge the HFO sentence on

double jeopardy grounds, <u>see id.</u> at 41. Respondents argue that Petitioner did not

properly exhaust the claims in the state courts, and therefore the claims are procedurally

barred. <u>See</u> Response at 10-14. The Court agrees that the claims have not been

exhausted, and are therefore procedurally barred since Petitioner failed to raise the claims in a procedurally correct manner. Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar.[12] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Petitioner's claims are not procedurally barred, Petitioner is not entitled to relief. To the extent Collins asserts that the trial court erred when it permitted the State to seek an HFO sentence and use his 1987 robbery conviction as a qualifying offense to increase his sentence under Florida Statutes section 775.084 (HFO statute), the claims present issues purely of state law not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of Collins' custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Coleman v. Thompson, 501 U.S. 722 (1991). Thus, insofar as Collins' claims in ground one allege the trial court erred under Florida law when it sentenced him as an HFO, such claims provide no basis for federal habeas relief. See Estelle, 502 U.S. at 67-68.

---

[12] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit. Therefore, Collins has not shown that he can satisfy an exception to the bar.

As to Collins' ineffectiveness claims, there is a strong presumption in favor of competence when evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Collins must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Collins has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Collins has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the

outcome of the case would have been different if counsel had acted as Collins claims she should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Collins is not entitled to federal habeas relief on his ineffectiveness claims.

Next, as grounds two and four, Collins asserts that the state circuit court erred when it imposed an HFO sentence. See Petition at 9, 28. According to Collins, the court's use of his 1987 robbery conviction as a qualifying offense to increase his sentence violates the double jeopardy clause of the United States Constitution and Apprendi, 530 U.S. 466. See Petition at 9-18, 28-50. He also maintains that the court erred when it used his 1987 conviction to increase his sentence because the 1987 conviction predates the enactment of the HFO statute. See id. at 9. Collins raised these claims in his petition for writ of prohibition, see Resp. Ex. M1, and the state appellate court denied the petition per curiam on the merits, see Resp. Ex. M2.[13]

Accordingly, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Collins is not entitled to relief on the basis of these claims.

---

[13] See Response at 42.

Nevertheless, even if the appellate court's adjudication of these claims is not entitled to deference, grounds two and four are still without merit. Florida Statutes section 775.084(1)(a) provides that the state circuit court may sentence a defendant to "an extended term of imprisonment" as an HFO if the court finds that:

> 1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses.
>
> 2. The felony for which the defendant is to be sentenced was committed:
>
> > a. While the defendant was serving a prison sentence or other sentence, or court-ordered or lawfully imposed supervision that is imposed as a result of a prior conviction for a felony or other qualified offense; or
> >
> > b. Within 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of the defendant's release from a prison sentence, probation, community control, control release, conditional release, parole or court-ordered or lawfully imposed supervision or other sentence that is imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later.

Fla. Stat. § 775.084(1)(a) (2012).

A brief chronology relating to the circuit court's imposition of the HFO sentence follows. The State filed its Notice of Intent to Classify Defendant as a Habitual Felony Offender on July 23, 2013. See Resp. Ex. B at 12; Sentencing Tr. at 4, 6. In the Notice, the State asserted that it would seek an enhanced penalty (a term of imprisonment of ten years) against Collins for the grand theft charge in case number 16-2013-CF-003339-AXXX-MA pursuant to the HFO statute. See Resp. Ex. B at 12. The State relied on Collins' two prior felony convictions (robbery conviction on February 13, 1987, and grand theft conviction on January 13, 2012) to meet the statutory criteria for designation as an HFO.

See id. The State delivered by hand a copy of the Notice to Collins and his attorney on July 23, 2013. See id. At the sentencing hearing, the State introduced certified copies of Collins' prior convictions as exhibits one and two. See Sentencing Tr. at 8. The State described Collins as "a career thief," and explained that the State filed the HFO notice due to his extensive record. Id. at 18. Based upon testimony presented by the State,[14] as well as exhibits received into evidence, the court stated that Collins "is a[] habitual offender as defined by Chapter 775 of the Florida Statutes," and notified the parties that it would proceed with the sentencing hearing under that law. Id. at 12. Defense counsel asked the court "to consider not habitualizing" Collins since "he's not a danger to the community, and the nature of the charge being grand theft." Id. at 14. Additionally, the State argued that Collins had eleven prior felony convictions and had just been released from prison when he committed the instant offense on April 6, 2013. See id. at 15, 17-18. After argument, the court stated in pertinent part:

> Mr. Collins, come stand beside your lawyer just a moment. And as you make your way before the Court, I want to say for purposes of the record, Ms. Stresing referenced her representation of the defendant during the course of trial, addressing a number of matters as best as possible, including going through a procedure, and in all candor with you, it's not an easy thing to do, to ask a lawyer to go through a lengthy receipt, but I think she did so very appropriately in an effort to present the best possible legal defense for you, attacking the value of the merchandise endeavored to be taken. And the reason for that is very simple, you are caught dead to rights on that video, it zooms in on your face at one point, you have an elementary ruse of trying on shoes, you're cramming clothes and Gator caps and all this stuff into a suitcase, you then go down to the toy section and the duffel bag you're filling is so full you can't zip it, and you're having to smash the bread you're trying to steal to try and close the bag. Perhaps it's the only line of defense she had on your behalf, but your lawyer

_____

[14] A fingerprint technician testified. See Sentencing Tr. at 8-12.

did everything possible to help you, and she's a good lawyer. The facts of this case and your guilt is self-evident.

You're a[] habitual offender, you were just released from prison for a grand theft. There is really no – there's only one possible outcome.

You're adjudicated guilty of the crime of which you've been convicted. I believe that was done at the time the verdict was received. And as a[] habitual offender, it is the sentence of this Court that you remain in the custody of the Duval County sheriff, and by him delivered into the custody of the Department of Corrections of the State of Florida, to be confined within the Florida State Prison system for a term of ten years.

Id. at 20-21. Thus, the record reflects that the State lawfully relied upon, and proved, two of Collins' prior felony convictions to classify him as an HFO.

Next, the Court turns to Collins' Apprendi claim (that the judicial factfinding required by the HFO statute violates his right to a trial by jury). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). Florida's HFO designation is based entirely on the existence of prior convictions. See Fla. Stat. § 775.084(1)(a); see also Dinkens v. State, 976 So. 2d 660, 662 (Fla. 1st DCA 2008) (holding "the habitual felony offender statute is based solely on prior convictions and therefore does not require a jury determination pursuant to Apprendi"). Accordingly, as Apprendi specifically exempts prior convictions from its holding, Collins' claim is without merit. Apprendi, 530 U.S. at 490; Lyons v. State, 292 So. 3d 906 (Fla. 1st DCA 2020) (per curiam) (citing Dinkens, 976 So. 2d at 662 (stating that the arguments that the findings in support of an HFO designation must be made by a jury have been repeatedly rejected by Florida courts)).

Additionally, Collins' claims that the HFO statutory provisions violate the constitutional prohibitions against double jeopardy and ex post facto are without merit. See Grant v. State, 770 So. 2d 655, 661-62 (Fla. 2000) (stating that "[a] habitual offender sentence is not an additional penalty for an earlier crime; rather, it is an increased penalty for the latest crime, which is an aggravated offense because of the repetition"); Raulerson v. State, 609 So. 2d 1301 (Fla. 1992); Lyons, 292 So. 3d 906 (citing Tillman v. State, 609 So. 2d 1295, 1298 (Fla. 1992) (rejecting the argument that an HFO sentence violates the constitutional protection against double jeopardy, and noting that an HFO sentence does not create a new substantive offense, but merely prescribes a longer sentence for the subsequent offenses which triggers the operation of the HFO statute)).  As such, Collins is not entitled to federal habeas relief as to grounds one, two and four.

### B. Ground Three

As ground three, Collins asserts that the trial court erred when it denied his motions for judgment of acquittal because the State failed to present a prima facie case as to the value of the merchandise in his cart. See Petition at 19-22. Additionally, he maintains that the trial court erred when it admitted an itemized receipt of the merchandise. See id. at 23. According to Collins, the trial court should not have permitted the State to prove the grand theft charge with the itemized receipt because it was inadmissible hearsay. See id. He states that neither Samantha Bray nor Xylon Stevenson (asset protection associates who testified at trial) had personal knowledge of the value of the goods listed on the receipt. See id. at 23-26. Collins, with the benefit of counsel, argued these issues on direct appeal, see Resp. Exs. B4; B6; the State filed an Answer Brief, see Resp. Ex. B5; and, the appellate court affirmed Collins' conviction and sentence per curiam without a written

opinion as to these issues, see Resp. Ex. B7. Thus, to the extent Collins is raising, in ground three, the same claims he presented on direct appeal, the claims are sufficiently exhausted.

In its appellate brief, the State addressed the claims on the merits, see Resp. Ex. B5 at 9-23, and therefore, the appellate court may have affirmed Collins' conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of these claims is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Collins is not entitled to relief on the basis of these claims.

Even assuming that the state court's adjudication of these claims is not entitled to deference, Collins' claims are nevertheless without merit. The claims present issues purely of state law not cognizable on federal habeas review. As noted above, the purpose of a federal habeas proceeding is to review the lawfulness of Collins' custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout, 562 U.S. at 219; Estelle, 502 U.S. at 67-68. Thus, insofar as Collins' claims in ground three allege that the evidence was insufficient to establish the value of the merchandise and that the receipt was inadmissible under Florida law, such claims provide no basis for federal habeas relief.

Nevertheless, assuming the claims present sufficiently exhausted issues of federal constitutional dimension,[15] Collins' claims are still without merit because the State presented ample evidence to support Collins' conviction for grand theft. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 319.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Collins guilty of theft and that the value of the property taken was $300 or more, but less than $20,000. Thus, there was sufficient evidence to support the conviction for grand theft under Florida Statutes section 812.014(2)(c),[16] as charged

---

[15] See Response at 30-31.

[16] Florida Statutes section 812.014 provides that a "person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently" deprive "the other person of a right to the

in the Information. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses' accounts of what happened on the day in question. See Tr. at 152-67 (Samantha Bray's testimony); 168-93 (Xylon Stevenson's testimony). Additionally, the jury watched the surveillance videotape during the trial and saw photographs, and therefore was entitled to make its own determination as to what was depicted on the videotape and in the photographs. Given the record, the trial court did not err when it admitted the itemized receipt into evidence, see id. at 176, and denied Collins' motions for judgment of acquittal, see id. at 204, 213.[17] Therefore, Collins is not entitled to federal habeas relief as to ground three.

---

property or a benefit from the property" or appropriate "the property to his or her own use or to the use of any person not entitled to the use of the property." Fla. Stat. § 812.014(1)(a),(b) (2012). The statute states it is "grand theft of the third degree and a felony of the third degree" if the property stolen is valued at $300 or more, but less than $20,000. Fla. Stat. § 812.014(2)(c)1-3; see Resp. Ex. B1 at 46, Judgment.

[17] The circuit court denied Collins' Rule 3.850 motion as to his ineffectiveness claim relating to the admission of a photograph, stating in pertinent part:

> [T]he State introduced extensive evidence of [Collins'] guilt. Franqui v. State, 59 So. 3d 82, 98 (Fla. 2011). The Walmart Asset Protection Officers observed [Collins] through surveillance cameras placing multiple items in a suitcase and duffel bag and watched him attempt to exit the store without paying for the items. (Ex. D at 155-59, 163-64, 169-73.) Notably, the State played this video footage for the jury. (Ex. D at 156-59.) One of the Asset Protection Officers observed a cashier scan the sixty-seven items recovered from [Collins] at a cash register and later physical[ly] arranged the items for a photograph. (Ex. D at 174-79, 180, 182.) Even if the photograph was not introduced, Mr. Stevenson's testimony of his firsthand knowledge and the receipt would have been sufficient to establish the items stolen and their worth.

Resp. Ex. E1 at 30.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Collins seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Collins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Collins appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of October, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 10/6
c:
James L. Collins, Jr., FDOC #855928
Counsel of Record